IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

QUENNARIEL MARTIN, natural
guardian of Zaiyden Hernandez, et al.,

    Plaintiffs,

        v.

WINTERS CHAPEL 592, LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-3105-TWT

## OPINION AND ORDER

This is a personal injury action. It is before the Court on the Defendants'
Motion to Dismiss [Doc. 4] and the Plaintiffs' Motion to Remand [Doc. 6]. For
the reasons set forth below, the Defendants' Motion to Dismiss [Doc. 4] is
DENIED as moot and the Plaintiffs' Motion to Remand [Doc. 6] is GRANTED.

## I.   Background[1]

This action arises out of the July 9, 2012 shooting death of Carlos
Daniels on the premises of The Jasmine at Winters Chapel Apartments (the
"Premises"). (Compl. ¶¶ 17, 19). The Plaintiffs are the mothers of Daniels's two
minor children. (*Id.* ¶¶ 1-2). The Plaintiffs allege that the Defendants—

---

[1] The Defendants assert a fraudulent joinder claim in opposition to the
Motion to Remand. "The determination of whether a resident defendant has
been fraudulently joined must be based upon the plaintiff's pleadings at the
time of removal, supplemented by any affidavits and deposition transcripts
submitted by the parties." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380
(11th Cir. 1998). Thus, although the Plaintiffs have since filed an Amended
Complaint, the operative complaint for purposes of addressing the Motion to
Remand is the original Complaint. [Doc. 1-1].

Winters Chapel 592, LLC, Arenda Capital Management, LLC, Lyon Management Group, Inc., and Jeffrey Kent—either "owned, operated, controlled, and/or managed" the Premises at all times relevant. (*Id.* ¶ 17). In particular, Kent was the property manager on the Premises during the relevant time period and was "responsible for planning, designing, implementing, monitoring, and/or facilitating a security plan to keep the premises safe for invitees from criminal attacks." (*Id.* ¶ 18). Further, Kent "actively managed the premises such that [he] controlled the premises at issue and acted with misfeasance." (*Id.*). The Defendants, including Kent, had "actual and constructive knowledge of criminal activity existing on the Premises, its approaches, and the surrounding area." (*Id.* ¶ 22). Despite this knowledge, "Defendants failed to adequately warn Carlos Daniels of the hazardous conditions on the property" and "failed to maintain adequate security devices to permit proper and safe use of the Premises." (*Id.* ¶¶ 27-28). Although unclear, the Plaintiffs appear to have asserted claims under O.C.G.A. § 51-3-1 for failing to keep the Premises safe and under O.C.G.A. § 44-7-14 for negligence and failure to keep the Premises in repair, in addition to other state law claims pertaining to the failure to inspect, patrol, and appropriately monitor the Premises for security risks. (*See id.* ¶ 33).

As relevant to the Motion to Remand, there is no dispute that Plaintiff Martin and Defendant Kent are both residents of Georgia. (2nd Am. Not. of

Removal ¶ 6, 14). In their Motion, the Plaintiffs argue that both Kent and Winters Chapel are Georgia residents, that Kent was properly joined, and that the Court thus lacks diversity jurisdiction over this action. (Mot. to Remand, at 2, 9-17). The Defendants argue that Kent was fraudulently joined because the Plaintiffs have no possibility of recovery against him under Georgia law and that none of the entity Defendants are Georgia residents. (Defs.' Resp. in Opp. to Mot. to Remand, at 6-22).

## II.  Legal Standards

Federal courts are courts of limited jurisdiction; they may only hear cases that the Constitution and the Congress of the United States have authorized them to hear. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). An action originally brought in state court may be removed by a defendant to federal court when the action satisfies the constitutional and statutory requirements for original federal jurisdiction. *See* 28 U.S.C. § 1441. Because of the limited authority of federal courts, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994). Where no federal question exists, diversity jurisdiction can be invoked where there is complete diversity among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

### III. Discussion

## A. Motion to Remand

The Plaintiffs argue that Defendants Winters Chapel and Kent are both considered Georgia residents, such that there is not complete diversity between the parties and removal was improper. (Mot. to Remand, at 2, 9-12). As to Kent, the Plaintiffs assert that Georgia courts have allowed cases to proceed on the theory that a property manager could face liability under O.C.G.A. § 51-3-1 and that Kent's testimony in Daniels's murder trial establishes that he exercised control over security decisions on the Premises. (*Id.* at 12-16). Therefore, they contend, the Defendants have failed to demonstrate that there is no possibility of relief against Kent. (*Id.* at 16).

The Defendants respond that Kent was fraudulently joined in this action because the Plaintiffs have no possibility of recovery against him. (Def.'s Resp. in Opp. to Mot. to Remand, at 5). They contend that based on the express statutory language in O.C.G.A. § 51-3-1, Kent cannot be held liable because he never had any ownership over the Premises and the Plaintiffs have failed to provide any evidence supporting their claims that Kent exercised sufficient supervisory control to be subject to occupier liability. (*Id.* at 5-10). Specifically, the Defendants assert that employees of occupiers are not themselves considered to be occupiers under Georgia law and that Kent had no authority to make security-related decisions at the Premises. (*Id.* at 10-12). The

Defendants further argue that Kent cannot be held individually liable because the altercation that resulted in Daniels's death was a purely personal dispute and Kent's knowledge of any threat was, at best, equal to Daniels's. (*Id.* at 12-18).[2]

When "on the face of the pleadings, there is a lack of complete diversity which would preclude removal of the case to federal court," the case "may nevertheless be removable if the joinder of the non-diverse party . . . [was] fraudulent." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Joinder of a non-diverse party may be fraudulent "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Id.* The Defendant must carry this heavy burden with clear and convincing evidence. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011).

> To assess whether a plaintiff may establish a claim against a non-diverse defendant, the court must evaluate factual allegations in the light most favorable to the plaintiff. The court should not weigh the merits of the plaintiff's claims beyond determining whether they are arguable under state law, and should resolve uncertainties about state substantive law in the plaintiff's favor. If there is even a possibility that a state court would find that the complaint states a claim against any of the non-diverse defendants, then the joinder was proper and the federal court must remand the case to the state court.
>
> . . . All that is required are allegations sufficient to establish even a possibility that a state court would find that the complaint

---

[2] The Court has also read and considered the Plaintiffs' Reply Brief. [Doc. 12].

states a cause of action against any one of the resident defendants.

*Kimball v. Better Bus. Bureau of W. Fla.*, 613 F. App'x 821, 823 (11th Cir. 2015) (citations omitted). "While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under [Rule] 56(b), the jurisdictional inquiry must not subsume substantive determination." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (quotation marks and citations omitted). "The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis." *Pacheco de Perez*, 139 F.3d at 1380.

In addition, when evaluating whether a plaintiff states a claim against a non-diverse defendant, federal courts "necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court." *Kimball*, 613 F. App'x at 823 (citation omitted). Georgia state courts employ a notice pleading standard, under which a plaintiff may plead legal conclusions and those conclusions may be considered by the court in determining whether the complaint sufficiently states a claim. *Id.*

> Georgia courts will not grant a motion to dismiss for failure to state a claim unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief

6

under any state of provable facts asserted in support thereof; and
(2) the movant establishes that the claimant could not possibly
introduce evidence within the framework of the complaint
sufficient to warrant a grant of the relief sought.

In Georgia, a complaint need not set forth all of the elements of a
cause of action as long as, within the framework of the complaint,
evidence may be introduced to sustain a grant of relief to the
plaintiff. The true test under Georgia's pleading standard is
whether the pleading gives fair notice and states the elements of
the claim plainly and succinctly, and not whether as an abstract
matter it states conclusions or facts.

*Id.* at 823-24 (quotation marks, alterations, and citations omitted).

The Defendants attached an affidavit given by Kent to their response. In it, Kent avers that, in his role as property manager on the Premises, he managed "day-to-day operations" and "was not involved in establishing the policies and procedures" for those operations. (Def.'s Resp. in Opp. to Mot. to Remand, Ex. 5 [Doc. 11-5], ¶¶ 6, 8). He further avers that he was not authorized to make security-related decisions and was not responsible for "planning, designing, implementing, monitoring, and/or facilitating security plans" on the Premises; instead, Defendant Lyon Management Group, Inc. was responsible for those decisions. (*Id.* ¶¶ 14-15). But in Kent's trial testimony at the murder trial, he also stated that he was responsible for maintaining a security fence between the Premises and another property which had to be replaced monthly due to cut throughs. (Mot. to Remand, Ex. 10 at 15).

The Defendants' argument that property managers can never be liable as occupiers under O.C.G.A. § 51-3-1 is not borne out by the case law. In fact,

7

the cases that have dealt with this issue have found that liability under the statute "may extend to non-owners with sufficient supervisory control over the subject premises at the time of the injury." *See, e.g.*, *Poll v. Deli Mgmt.*, Inc., 2007 WL 2460769, at \*6 (N.D. Ga. Aug. 24, 2007). The Georgia Court of Appeals acknowledged as much in *Gregory v. Trupp*, 171 Ga. App. 299, 300 (1984) when it noted that whether a contract maintenance man for a vacant lot—who regularly mowed grass, maintained the shrubs, cleaned trash, and ordered children off the lot—exercised sufficient control to subject himself to liability as an occupier of land under O.C.G.A. § 51-3-1 was a factual issue for a jury to determine, precluding a grant of summary judgment. Similarly, in *Otey v, AMC Entertainment Holdings, Inc.*, this Court found no fraudulent joinder where the plaintiff asserted a premises liability claim against a movie theater manager where the plaintiff suffered a gunshot wound at the movie theater. 2024 WL 1468342, at \*1, 4 (N.D. Ga. Apr. 2, 2024). In *Otey*, as here, the manager-defendant submitted an affidavit averring that he was not responsible for security on the premises. And in *Acosta v. Brinker Georgia, Inc.*, this Court likewise found no fraudulent joinder where the plaintiff asserted a premises liability claim against a Chili's restaurant manager after slipping and falling on a substance in the restaurant because, "as the general manager on duty, . . [the manager] undoubtedly maintained at least some kind of supervisory control over the restaurant." 2023 WL 8027276, at \*2-3 (N.D.

Ga. Nov. 20, 2023).

While the Defendant invites the Court to weigh Kent's affidavit against the Plaintiffs' asserted facts and evidence and delve into the merits issues of whether Kent had sufficient supervisory control over the premises, whether employees of occupiers can themselves be occupiers under Georgia law, and what knowledge Kent may have had of the shooter's threat, these are not the inquiries currently before the Court. *See Kimball*, 613 F. App'x at 823 ("The court should not weigh the merits of the plaintiff's claims beyond determining whether they are arguable under state law."); *Crowe*, 113 F.3d at 1538 (noting that the "jurisdictional inquiry must not subsume substantive determination"). Instead, the Court is tasked only with assessing whether there is "even a possibility that a state court would find that the complaint states a claim against any of the non-diverse defendants." *Kimball*, 613 F. App'x at 823. The Plaintiffs have stated such a possible claim here. Construing the facts in the Plaintiffs' favor, they have alleged that Kent (1) was "responsible for planning, designing, implementing, monitoring, and/or facilitating a security plan to keep the premises safe for invitees from criminal attacks;" (2) "actively managed the premises such that [he] controlled the premises at issue and acted with misfeasance;" and (3) had "actual and constructive knowledge of criminal activity existing on the Premises, its approaches, and the surrounding area." (Compl. ¶¶ 18, 22). Under Georgia's lenient pleading standards, the Court

9

cannot say with certainty at this stage that the Plaintiffs are not entitled to

relief on their claim against Kent under any set of provable facts; as the Court

has explained, several courts faced with similar fact patterns have agreed and

found no fraudulent joinder. *See id.* at 823-24. Whether the Plaintiffs will

ultimately prevail on their claim is a question for another day, and even if they

do not, it "does not mean that the [P]laintiffs have not stated a cause of action

for purposes of the fraudulent joinder analysis." *Pacheco de Perez*, 139 F.3d at

1380.

For these reasons, the Court concludes that the Defendants have not

carried their heavy burden of showing that Kent was fraudulently joined to

this action. *See Stillwell*, 663 F.3d at 1332. It is undisputed that complete

diversity does not exist with Kent in the case, as both he and Plaintiff Martin

are Georgia residents, and no other basis for federal jurisdiction was asserted.

(2nd Am. Not. of Removal ¶ 6, 14). Therefore, the Court lacks subject matter

jurisdiction to hear this case, and remand is warranted. 28 U.S.C. §§ 1332(a),

1441. The Plaintiffs' Motion to Remand [Doc. 6] will be granted.[3]

### B. Motion to Dismiss

Finally, the Defendants' Motion to Dismiss [Doc. 4] is now moot in light

of the Plaintiffs' filing of an Amended Complaint [Doc. 8]. Accordingly, the

---

[3] Because the Court finds diversity to be lacking with Kent remaining
as a Defendant to the case, the Court need not address the Parties' residency
challenges as to the entity Defendants.

Motion to Dismiss will be denied as moot.

### IV. Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss [Doc. 4] is

DENIED as moot and the Plaintiffs' Motion to Remand [Doc. 6] is GRANTED.

The Clerk is DIRECTED to remand this action to the State Court of DeKalb

County.

SO ORDERED, this ___17th___ day of January, 2025.

THOMAS W. THRASH, JR.
United States District Judge